UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EAST VILLAGE NEW DELI CORP.,

                      Plaintiff,

-v-

UNITED STATES OF AMERICA, et al.,

                      Defendants.

20 Civ. 7356 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Before the Court is a motion by plaintiff East Village New Deli Corp. ("East Village") to stay a final decision of the Food Nutrition Service ("FNS"), a department of the U.S. Department of Agriculture ("USDA"), during the pendency of this action. FNS's decision permanently disqualified East Village from participating in the Supplemental Nutrition Assistance Program ("SNAP"). For the reasons that follow, the Court denies the motion to stay.

## I. Background

### A. Factual Background

FNS operates the SNAP program. *See* Food Stamp Act of 2008, 7 U.S.C. §§ 2011–2036a; *see also* 7 C.F.R. § 271.3. SNAP's purpose is "to promote the general welfare, to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." *Id.* § 2011. "SNAP beneficiaries receive a government-issued Electronic Benefits Transfer ('EBT') card and can purchase designated food items at participating firms by swiping their EBT card through an electronic reader." *Makey Deli Grocery Inc. v. United States*, 873 F. Supp. 2d 516, 517 (S.D.N.Y. 2012) (citing 7 U.S.C. § 2016(f)(3)(B); 7 C.F.R. §§ 274.2, 274.3). The Government then redeems the benefits and pays the participating firm the value of the purchase. *Id.* (citing 7 U.S.C. §§ 2013(a), 2019).

FNS is responsible for overseeing SNAP and monitoring firms to ensure compliance with the program. *See* 7 C.F.R. § 271.3. Trading SNAP benefits for items other than eligible food items constitutes "trafficking." 7 C.F.R. §§ 271.2, 278.2(a). A participating firm found to have engaged in trafficking is permanently disqualified from SNAP. *See id.* § 278.6(e). However, if the firm "timely submits to FNS substantial evidence which demonstrates that the firm had established and implemented an effective compliance policy and program to prevent violations of the Program," it can request a civil money penalty ("CMP") in lieu of permanent disqualification. *Id.* § 278.6(i).

East Village is a grocery store located at 115 Avenue A, New York, N.Y., 10009. *See* Dkt. 1 ("Compl.") ¶ 4. On May 7, 2020, USDA sent East Village a letter notifying it that USDA was charging it with trafficking, which carries the penalty of permanent disqualification from SNAP. *See id.* ¶ 8; *see also id.*, Ex. 1 ("May 7, 2020 Letter"). In the letter, USDA alleged that it had identified "Electronic Benefit Transfer (EBT) transactions that establish[ed] clear and repetitive patterns of unusual, irregular, and inexplicable activity for [East Village's] type of firm." May 7, 2020 Letter at 1. USDA included in the letter a list of the allegedly irregular charges, which were incurred between October 2019 and March 2020. There were two types of unusual transactions that USDA identified: (1) multiple EBT transactions from accounts of individual SNAP households within a set time period; and (2) transactions that were large compared to "observed store characteristics and recorded food stock." *Id.* USDA gave East Village 10 days to respond to the charges. It described the process by which East Village could request CMP in lieu of permanent disqualification.

On May 14, 2020, East Village responded by letter. Compl., Ex. 2 ("May 14, 2020 Letter"). In general terms, it denied having engaged in trafficking and argued that "the

2

information (or lack thereof) presented by [USDA] [did] not support a finding of 'trafficking.'" East Village explained that the transactions "merely illustrate[] a typical six-month period at East Village in which all EBT transactions were legal and conducted in full compliance with SNAP regulations." The letter deemed USDA's accusations "wholly circumstantial" and stated that the "multiple EBT transactions from the same customers occurring typically five-to-six hours apart" were "nothing more than customers returning to make additional purchases after making their original purchase several hours earlier." East Village attached affidavits from the owner, Amran Abdo Nahshal, and three employees to the letter regarding the store's effective compliance policy.

On July 23, 2020, USDA responded by letter. *Id.*, Ex. 3 ("July 23, 2020 Letter"). USDA stated that it had found that the violations outlined in the May 7, 2020 Letter had occurred and that East Village would be permanently disqualified from SNAP. USDA stated that it had also found that East Village had failed to establish and implement an effective compliance policy to prevent SNAP violations, and therefore that East Village was not eligible for a CMP.

On July 27, 2020, East Village sought administrative review of USDA's decision and reprised its arguments that there was "absolutely nothing to support" USDA's determination that East Village had engaged in trafficking. *Id.*, Ex. 4. East Village further argued that it did have an effective compliance policy in place. *Id.* On September 9, 2020, USDA issued its final agency decision, disqualifying East Village from SNAP. *Id.*, Ex. 5.

### B. Procedural History

On September 9, 2020, East Village filed the Complaint, seeking *de novo* judicial review of USDA's decision to permanently ban East Village from participation in SNAP. Compl. The same day, East Village filed a motion to stay the agency's decision pending this action. Dkt. 5.

3

On September 29, 2020, defendants moved for an extension of time to oppose the motion to stay until October 5, 2020, Dkt. 10, which the Court granted, Dkt. 11.

## II. Discussion

### A. Availability of Stay in Cases of Permanent Disqualification

At the threshold, the parties dispute whether a stay is available under the Food Stamp Act in cases of permanent disqualification. *See* Dkt. 6 ("Mem.") at 5; Dkt. 13 ("Opp'n") at 6–10. Section 2023(a)(17) provides that during judicial review of FNS's decision, the decision remains in full force and effect, unless "after hearing thereon and a consideration by the court of the applicant's likelihood of prevailing on the merits and of irreparable injury, the court temporarily stays such administrative action pending disposition of such trial or appeal." However, the next subsection provides that "[n]otwithstanding any other provision of this subsection, any permanent disqualification of a retail food store or wholesale food concern under paragraph (3) or (4) of section 2021(b) of this title shall be effective from the date of receipt of the notice of disqualification." *Id.* § 2023(a)(18). Further, in cases of permanent disqualification, if the court reverses FNS's decision, the Secretary of Agriculture "shall not be liable for the value of any sales lost during the disqualification period." *Id.*

Courts have reached conflicting results as to whether stays are available in cases of permanent disqualification. Some have read the text of § 2023(a)(18) to "reflect[] that a stay is not available in cases of permanent disqualification." *Ilaian v. U.S. Dep't of Agric., Food & Nutrition*, 87 F. Supp. 2d 1047, 1048 (S.D. Cal. 2000); *cf. Skyson USA, LLC v. United States*, 651 F. Supp. 2d 1202, 1208 (D. Haw. 2009) (stating that although text is ambiguous, the most "natural reading" is that a stay is not available because § 2023(a)(18) provides that a permanent disqualification "'shall'—*i.e.*, must—begin on the date the retailer receives notice of the disqualification"). *Ilaian* noted that the USDA's regulations interpreting and implementing

4

§ 2203 provide that "permanent disqualification actions taken in accordance with § 278.6(e)(1) of this chapter shall not be subject to such a stay of administrative action," thereby implicitly indicating that, were the statute held ambiguous, deference to the USDA's interpretation of it would be due under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). 87 F. Supp. 2d at 1048 (quoting 7. C.F.R. § 279.10(d)).

Other courts have found that § 2023 unambiguously allows stays, making the agency's regulation to the contrary ineffective. *See Tony's Pantry Mart Inc. v. U.S. of Am. Dep't of Agric. Food & Nutrition Serv.*, 175 F. Supp. 3d 987, 993 (N.D. Ill. 2016); *Lazaro v. U.S. Dep't of Agric.*, 186 F. Supp. 2d 1203, 1211 (M.D. Fla. 2001). Section 2023(a), they reason, does not "limit the circumstances under which a store may seek a stay," and § 2023(a)(18) "does not contain any language that limits the federal courts' authority to grant a stay under § 2023(a)(17)." *Tony's Pantry Mart Inc.*, 175 F. Supp. 3d at 994 (citing *Lazaro*, 186 F. Supp. 2d at 1210).

Two courts in this Circuit have resolved applications for such stays. *See Al Amin Halal Meat & Fish Mkt. Inc. v. United States*, No. 15 Civ. 276A, 2015 WL 12552019, at *15 (W.D.N.Y. Oct. 21, 2015) (noting that USDA's regulations prohibit stays in cases of permanent disqualification, but not having occasion to resolve statutory interpretation because plaintiff did not qualify for a stay on the merits), *report and recommendation adopted*, 2015 WL 12552031 (W.D.N.Y. Dec. 7, 2015); *Ahmed v. United States*, 47 F. Supp. 2d 389, 393–401 (W.D.N.Y. 1999) (granting stay of permanent disqualification without analyzing statutory availability of a stay under § 2023).

The Court here does not have occasion to determine whether, as a matter of statutory interpretation, a stay is available pending completion of judicial review of a final administrative decision by FNS permanently disqualifying a business from participating in SNAP. That is

5

because, as in *Al Amin*, the Court finds that, even if the statute allowed for such a stay, East Village would not qualify for one on the merits.

## B. Merits of the Stay

The standards for a stay under § 2023(a)(17) are that the applicant (1) is likely to prevail on the merits to its challenge to permanent disqualification, and (2) would suffer irreparable injury absent the stay.[1]

### a. *Likelihood of Success on the Merits*

East Village argues that it is likely to succeed on the merits because it was denied due process, in violation of the Fifth Amendment, when USDA permanently banned it from SNAP without a hearing. *See* Mem. at 5. East Village contends that it had a property interest in its SNAP participation and was entitled to a pre-deprivation hearing. *See id.* at 5–10. And § 2023(a) does not require a hearing; it provides instead for *de novo* review of USDA's decision by a district court. *See* § 2023(a)(10), (15). USDA does not appear to dispute that East Village has a property interest in its SNAP participation. Instead, it argues that its current administrative review process comports with due process. *See* Opp'n at 10–15. That process, it notes, gave "East Village two separate opportunities to present exculpatory evidence to the government"

---

[1] A preliminary injunction staying USDA's decision to disqualify a participating firm from participating in SNAP is subject to the "more rigorous likelihood of success standard" because the plaintiff "seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme." *Young Jin Choi v. United States*, 944 F. Supp. 323, 325 (S.D.N.Y. 1996) (interpreting the Food Stamp Act of 1977); *see also Faisal & A, LLC v. United States*, No. 19 Civ. 14184, 2019 WL 4674500, at *3 (S.D. Fla. Sept. 25, 2019) ("When considering a motion for a stay involving Government action taken in the public interest, a traditional 'balance of the equities' approach is not used, as the public interest in ensuring that limited funds are available for the needy recipients of the food stamp program is very strong." (citations and quotations omitted)). *But see Mr. Smoky's BBQ, LLC v. United States*, No. 13 Civ. 2585 (PHX) (DGC), 2014 WL 24152, at *1–3 (D. Ariz. Jan. 2, 2014) (applying balance of the equities test).

before the decision to disqualify it: once after USDA's May 7, 2020 Letter, and again after the July 23, 2020 Letter. *Id.* at 11.

The Supreme Court has identified three factors for courts to balance in determining whether a pre-deprivation procedure provides due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Here, East Village undeniably has a property interest in continued participation in the SNAP program. That said, the interest is less than that of the recipients of SNAP aid, as "retailers are only incidental beneficiaries under the [SNAP] statutory scheme." *Ibrahim v. U.S. Through Dep't of Agric.*, 650 F. Supp. 163, 167 (N.D.N.Y.), *aff'd*, 834 F.2d 52 (2d Cir. 1987). The primary beneficiaries are low-income households who receive SNAP EBT benefits. There is no claim here that the disqualification of retailer East Village has compromised any recipient's interest.

And the Government's interests in promptly disqualifying retailers who are found to be abusing the SNAP program are strong. These interests consist of "reducing food stamp abuse and in administering the program for the primary beneficiaries, the SNAP recipients," assuring that scarce funds remain available for qualifying recipients, and avoiding "the financial and administrative burdens associated with having an administrative hearing prior to the federal court's de novo review." *Tony's Pantry Mart Inc.*, 175 F. Supp. 3d at 996.

As for the risk of erroneous deprivation, on the facts here it is modest. It is undisputed that East Village was given two opportunities to present evidence to USDA that the challenged

7

transactions were, in fact, for eligible food items. Although it made a general denial, calling the USDA's proof circumstantial and claiming that customers in each instance had returned to the store multiple times per day, it did not produce evidence from customers to this effect, or substantiate that any of the purchases had, in fact, been SNAP-compliant. And, as USDA notes, numerous courts in this District have affirmed on *de novo* review determinations by USDA to disqualify a retailer based on similar transaction data indicative of program abuse. *See, e.g., Nadia Int'l Mkt. v. United States*, 689 F. App'x 30, 31–34 (2d Cir. 2017) (summary order) (affirming USDA's disqualification of firm based on, among others, "rapid successive purchases involving the same household" and "relatively high dollar-value transactions given [plaintiff's] size and inventory"); *see also* Opp'n at 14 (collecting cases).

East Village relies on *Mr. Smoky's BBQ*. The court there found that, on the "unique facts" of the case, plaintiffs had demonstrated likelihood of success on the merits of their claim that they had been denied due process by being permanently disqualified without a deprivation hearing. *Mr. Smoky's BBQ*, 2014 WL 24152, at *2. These facts were that the challenged charges were almost five years old and concerned approximately $55 in SNAP benefits in total. *See id.* at *1. The age of the charges made it challenging for plaintiffs to respond within 10 days because they "lacked records and memories to respond fully." *Id.* And, the court found, the Government's delay in bringing the charges undercut the urgency of its interest. *Id.* at *2. This case is readily distinguished, in that the oldest charges are from October 2019, and there are 174 challenged transactions, totaling some $22,087.12. *See* Compl., Ex. 1. East Village therefore does not face the same difficulty in obtaining records validating its disputed charges, many of which are from 2020, including some only a few months old as of USDA's first letter. And the Government's interest is strong. The dollar value of the program fraud alleged is considerable,

8

approximately 400 times that in *Mr. Smoky's BBQ*. Further, in contrast to *Mr. Smoky's BBQ*, the USDA began its administrative process with dispatch and so has not undercut the urgency of its interest in this case.

Accordingly, while East Village is entitled to and will receive *de novo* review of its claim in this case that the USDA wrongly disqualified it from participation as a retailer in the SNAP program, it has not, at this point, demonstrated that it is likely to succeed on the merits of its procedural due process claim.

### b. *Irreparable Injury*

East Village argues that if a stay is not granted, it will suffer irreparable injury because it handles approximately $20,000 per month in SNAP transactions. Mem. at 8. It furthers argues that some of its customers, SNAP-eligible residents of the neighborhood that East Village serves, will also be harmed, because they will have to "walk several blocks in a different direction in order to purchase" essentials. *Id.* For this point, East Village again relies on *Mr. Smoky's BBQ*, which found that both the retailer and the community would suffer irreparable harm. The store, Bubba's, was a "very small store, accommodating only three or four customers at a time," and which earned "only $26,000 annually." *Mr. Smoky's BBQ*, 2014 WL 24152, at *1. Without a stay, the court found, Bubba's would go out of business within a few weeks. *Id.* And, the court found, most people in Bubba's neighborhood received some type of government assistance, primarily SNAP, and spent their SNAP benefits at Bubba's. *See id.*

East Village has not made a similar showing. As to itself, East Village admits that it is not on the verge of bankruptcy. *See* Mem. at 8. And while it claims it will lose $20,000 in monthly SNAP revenue, it does not put this figure in context. It does not, for example, report its overall revenue, including from non-SNAP sources. It appears that East Village has remained in business since the USDA terminated its benefits. Finally, as to the harm to customers, although

9

East Village states that there are only a few grocery stores in the general proximity that participate in SNAP, it acknowledges that at least some of these are "within several blocks" of East Village. Mem. at 8.

Accordingly, East Village has not made a showing of irreparable harm, and its showing as to this required element falls well short of that made in *Mr. Smoky's BBQ*.

## CONCLUSION

For the reasons explained, the Court denies East Village's motion for a stay pending the outcome of this litigation. However, the Court is committed to ensuring that this litigation, in which USDA's disqualification of East Village will be reviewed *de novo*, proceeds on a prompt schedule.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 6.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: February 12, 2021
New York, New York